UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PUBLIC WATCHDOGS,<br><br>                           Plaintiff,<br>v.<br>UNITED STATES OF AMERICA, et al.,<br>                          Defendants. | Case No.: 17-CV-2323-JLS (BGS)<br><br>**ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS**<br><br>(ECF Nos. 12, 13) |

Presently before the Court are Defendants United States of America, the Department of Defense, James Mattis, the Department of the Navy, and Richard V. Spencer's (collectively, the "Federal Defendants") Motion to Dismiss ("Federal MTD," ECF No. 12), and Defendants Southern California Edison Company and San Diego Gas & Electric Company's (collectively, the "Utility Defendants") Motion to Dismiss ("Utility MTD," ECF No. 13). Also before the Court is Plaintiff Public Watchdogs' Consolidated Response in Opposition to the Motions ("Opp'n," ECF No. 20). The Federal Defendants filed a Reply in Support of their Motion, ("Federal Reply," ECF No. 21), as did the Utility Defendants, ("Utility Reply," ECF No. 22). The Court vacated the hearing on the motions and took the matter under the submission pursuant to Civil Local Rule 7.1(d)(1). (ECF No. 23.) After considering the Parties' arguments and the law, the Court **GRANTS** Defendants' Motions to Dismiss.

# BACKGROUND

Plaintiff Public Watchdogs is a California non-profit corporation that "serves as a public 'watchdog' to ensure that government agencies and special interests comply with applicable laws, especially in the public-utilities industry." (ECF No. 1 ("Compl.") ¶ 2.) Plaintiff brings suit against Defendants to obtain an injunction and prevent them from storing "spent nuclear fuel containers at the San Onofre Nuclear Generating Station ("SONGS"), ocean-front public land that was leased from the federal government for electricity-generating purposes but never intended to be used for post-closure storage of such containers." (*Id.*) Plaintiff claims that Defendants' storage of spent nuclear fuel ("SNF") containers violates Public Law Number 88-82. (*Id.* ¶ 15.)

Congress enacted Public Law Number 88-82 on July 30, 1963, which authorized "the Secretary of the Navy to grant easements for the use of lands in the Camp Joseph H. Pendleton Naval Reservation, California, for the construction, operation, maintenance, and use of a nuclear electric generating station, consisting of one or more generating units, and appurtenances thereto." (*Id.* ¶ 9.) The purpose of the easement is for "constructing, operating, maintaining, and using electric transmission and communication lines, switchyards and substations, cooling water conduits, pipelines for water, gas and sewage, railroad spur tracks, access roads and other appurtenances to said facilities and to said nuclear electric generating station." (*Id.*) After the enactment of the law, the Federal Defendants granted an easement to the Utility Defendants, who began operating three nuclear electric generating units at SONGS. (*Id.* ¶¶ 10–11.) In 1992, the Utility Defendants shut down Unit 1. (*Id.* ¶ 12.) Around June 12, 2013, the Utility Defendants notified the United States Nuclear Regulatory Commission ("NRC") that they had shut down the remaining two units. (*Id.* ¶ 13.) The NRC's website "provides information about the storage of spent fuel at SONGS." (*Id.* ¶ 14.) Plaintiff claims that the storage of spent fuel at SONGS "was not contemplated or authorized by Public Law 88-82." (*Id.* ¶ 15.) Moreover, Plaintiff alleges that "[a]ny agreement or action by the [United States] to allow the storage of spent fuel at SONGS under the grant authorized by Public Law 88-82, as

well as any and all actions taken by [the Utility Defendants] to store the spent fuel at SONGS, is illegal." (*Id.*)

Plaintiff claims that the storage of spent fuel at SONGS is harming "Plaintiff, its members, and members of the public generally." (*Id.* ¶ 16.) Plaintiff alleges that "if a container storing spent fuel were to break open due to mishandling or due to corrosion caused by the proximity to salt-heavy ocean air and moisture, tens of thousands of people within 50 miles of SONGS could be exposed to levels of radiation that would cause imminent death." (*Id.*) Moreover, Plaintiff claims that one of its members lives within this potential exposure zone. (*Id.* ¶ 2.) Plaintiff therefore seeks a declaration from this Court that the storage of spent nuclear fuel at SONGS is not authorized by Public Law Number 88-82 and an order enjoining the Government from authorizing the Utility Defendants to store spent nuclear fuel at SONGS. (*Id.* Prayer for Relief.)

## LEGAL STANDARD

Federal courts are courts of limited jurisdiction and, as such, have an obligation to dismiss claims for which they lack subject-matter jurisdiction. *Demarest v. United States*, 718 F.2d 964, 965 (9th Cir. 1983). Because the issue of standing pertains to the subject matter jurisdiction of a federal court, motions raising lack of standing are properly brought under Federal Rule of Civil Procedure 12(b)(1). *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). "The party asserting jurisdiction bears the burden of establishing subject matter jurisdiction on a motion to dismiss for lack of subject matter jurisdiction." *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 546 F.3d 981, 984 (9th Cir. 2008) (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *Stock W., Inc. v. Confederated Tribes of the Colville Reservation*, 873 F.2d 1221, 1225 (9th Cir. 1989)). "Dismissal for lack of subject matter jurisdiction is appropriate if the complaint, considered in its entirety, on its face fails to allege facts sufficient to establish subject matter jurisdiction." *Id.* (citing *Love v. United States*, 915 F.2d 1242, 1245 (9th Cir. 1990)).

/ / /

/ / /

# ANALYSIS

Plaintiff's sole cause of action against Defendants is that the Federal Defendants' authorization and the Utility Defendants' storage of spent nuclear fuel at SONGS violates Public Law Number 88-82. (*See* Compl. ¶¶ 9–16.) Each Defendant argues that it is entitled to dismissal of all claims against it for various reasons. The Court first analyzes whether Plaintiff has standing to bring its Complaint.

## I. Article III Standing

Defendants argue that Plaintiff lacks Article III standing because Plaintiff fails to allege an injury that is actual or imminent.

### A. *Legal Standard*

"Article III of the Constitution limits the jurisdiction of federal courts to 'Cases' and 'Controversies.' One component of the case-or-controversy requirement is standing, which requires a plaintiff to demonstrate the now-familiar elements of injury in fact, causation, and redressability." *Lance v. Coffman*, 549 U.S. 437, 439 (2007) (per curiam) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 573–74 (1992)). To satisfy the requirements of "injury in fact," a plaintiff must show that she suffered "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (internal quotation marks and citations omitted). In other words, the injury must be "concrete in both a qualitative and temporal sense" such that a plaintiff "must allege an injury to himself that is distinct and palpable." *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990) (internal quotation marks and citations omitted). Additionally, the plaintiff "must have more than 'a general interest common to all members of the public.'" *Lance*, 549 U.S. at 440 (quoting *Ex parte Levitt*, 302 U.S. 633, 636 (1937) (per curiam)).

### B. *Analysis*

Plaintiff claims "[it], its members, and members of the public generally are being harmed by Defendants' conduct in authorizing the storage of spent nuclear fuel at SONGS

and by their actual storage of spent fuel." (Compl. ¶ 16.) Plaintiff supports its allegation by asserting the following:

> By way of example and not limitation, if a container storing spent fuel were to break open due to mishandling or due to corrosion caused by the proximity to salt-heavy ocean air and moisture, tens of thousands of people within 50 miles of SONGS could be exposed to levels of radiation that would cause imminent death.

(*Id.*)

The Federal Defendants argue that "Plaintiff not only alleges mere possible injury at some unknown future time, but also relies on a 'highly attenuated chain of possibilities' to support the notion that a future release and exposure 'could' occur." (Federal MTD at 10 (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410 (2013)).) Thus, the Federal Defendants argue that "the alleged exposure that Plaintiff believes could occur is purely speculative, not certainly impending, and therefore does not qualify as an injury in fact sufficient to support standing in this case." (*Id.* (internal quotation marks omitted).)

Plaintiff responds that the alleged harm is concrete and imminent because the "radioactive waste also creates a credible threat of harm that is sufficient to confer standing." (Opp'n at 5–6.) Specifically, Plaintiff claims that "[s]toring nuclear waste at SONGS poses a credible threat of harm to Plaintiff's members because it is only a matter of time before the containers leak due to salt-water corrosion, sea-level rise, and/or— heaven forbid!—human error." (*Id.* at 6.) Further, Plaintiff argues that it and its members will suffer an injury in fact "because their aesthetic and recreational values of the area will be lessened, and their health will be put at perilous risk, if Defendants' conduct continues." (*Id.*)[1]

---

[1] Plaintiff attached to its Opposition declarations and letters from its members. (ECF Nos. 20-1–20-3.) Courts regularly decline to consider declarations and exhibits submitted in support of or opposition to a motion to dismiss if they constitute evidence not referenced in the complaint or not properly subject to judicial notice. *Gerritsen v. Warner Bros. Entm't Inc.*, 112 F. Supp. 3d 1011, 1021 (C.D. Cal. 2015); *City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*, 880 F. Supp. 2d 1045, 1060 (N.D. Cal. 2012). Here, neither the declaration nor the letters are referenced in the Complaint and Plaintiff does not request that

Plaintiff points to *Central Delta Water Agency v. United States*, 306 F.3d 938 (9th Cir. 2002). There, the plaintiffs alleged the United States Bureau of Reclamation was incorrectly operating the local dams, reservoirs, plants, and canals (the "Project"). Plaintiffs filed suit after a plan was adopted and the Project began releasing water. *Id.* at 946. Plaintiffs alleged the method of operation was highly likely to damage their crops. *Id.* at 947. In analyzing whether the plaintiffs had alleged sufficient standing, the court held that the plaintiffs must show that they "face significant risk that the crops they have planted" will be damaged as a result of the defendant's decisions. *Id.* at 948. In sum, a "credible threat of harm is sufficient to constitute actual injury." *Id.* at 950.

More recently, in *Clapper v. Amnesty International USA*, 568 U.S. 398, the plaintiffs challenged surveillance procedures authorized by the Foreign Intelligence Surveillance Act of 1978. *Id.* at 401. The plaintiffs challenged the surveillance procedures by arguing that "there [was] an objectively reasonable likelihood" that their communications with foreign contacts would be "intercepted . . . at some point in the future." *Id.* at 410. The plaintiffs did not allege that their communications were actually being intercepted, and only relied on a series of inferences about how the government would act. *See id.* at 411. The Supreme Court found plaintiffs' standing theory rested on the "speculation about the decisions of independent actors." *Id.* at 414. Thus, the Court held that plaintiffs' "speculative chain of possibilities [did] not establish that injury based on potential future surveillance [was] certainly impending." *Id.* The Court noted that "cases do not uniformly require plaintiffs to demonstrate that it is literally certain that the harms they identify will come about" and that, "[i]n some instances, [it has] found standing based on a 'substantial risk' that the harm will occur." *Id.* at 414 n.5.

One court has found that *Central Delta* has been abrogated by *Clapper*'s "certainly impending" and "substantial risk" standards. *See Backus v. General Mills, Inc.*, 122 F.

---

the Court take judicial notice of them. Consequently, the Court does not consider these documents in analyzing the present Motions.

Supp. 3d 909, 922 (N.D. Cal. 2015).  But, in *In re Zappos.com, Inc.*, 888 F.3d 1020 (9th Cir. 2018), the Ninth Circuit held the standard of showing "credible threat of real and immediate harm" to establish standing had survived *Clapper*.  *Id.* at 1025–27 (citing *Krottner v. Starbucks Corp.*, 628 F.3d 1139 (9th Cir. 2010)).  The court noted *Clapper*'s standing analysis was "especially rigorous" due to the "sensitive national security context" and the Supreme Court was being asked to "declare actions of the executive and legislative branches unconstitutional." *In re Zappos.com, Inc.*, 888 F.3d at 1026.  This Court does not opine on the issue here because it finds that Plaintiff has not proven standing under either standard.

Plaintiff alleges future harm by providing a hypothetical situation, in which catastrophic consequences could ensue if certain conditions were to happen.  (*See* Compl. ¶ 16.)  Similar to *Clapper*, in which the plaintiffs relied solely on a "speculative chain of possibilities," Plaintiff here relies only on hypothetical conditions that might lead to certain consequences.  *See* 568 U.S. at 414; *see* also Compl. ¶ 16.  Although Plaintiff claims that "it is only a matter of time before the containers leak" (Opp'n at 6), it does not allege that any container has in fact leaked.  Plaintiff also does not allege that Defendants are mishandling the stored spend fuel or causing any conditions that would corrode the containers storing spent fuel, nor does Plaintiff refer to any impending event which would lead to leaked fuel.  Rather, Plaintiff appears to be speculating as to whether Defendants are "mishandling" the stored spent fuel or creating conditions such that "it is only a matter of time before the containers leak."  (*Id.*)

The Court declines to endorse Plaintiff's conjecture about Defendants' behavior.  Without more than mere hypotheticals, Plaintiff has not proven standing under *Clapper* or *Central Delta* because Plaintiff has not shown that the alleged future harm or diminishment of the area is "certainly impending" or even that there is a "substantial risk" or "credible threat" that immediate harm will occur.

In sum, Plaintiff does not allege a concrete or imminent harm.  Although the Court agrees with Plaintiff that it "need not wait until the beach at San Onofre is destroyed"

before it can bring this case (Opp'n at 6), as currently pled, Plaintiff's Complaint does not allege sufficient injury to establish Article III standing. Therefore, the Court lacks jurisdiction over the matter and **GRANTS** Defendants' Motion to Dismiss Plaintiff's Complaint.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** both the Federal Defendants' and the Utility Defendants' Motions to Dismiss (ECF Nos. 12, 13). Because the Court finds it is possible Plaintiff could amend its Complaint to cure the deficiencies noted herein, however, the Court **GRANTS** Plaintiff leave to amend its Complaint. Plaintiff **SHALL FILE** an amended complaint within thirty (30) days of the electronic docketing of this Order. *Failure to do so may result in this case being dismissed without prejudice for failure to prosecute.*

**IT IS SO ORDERED.**

Dated: August 30, 2018

*Janis L. Sammartino*
Hon. Janis L. Sammartino
United States District Judge